UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| **CHRIS YOUNG**, | Case No. 2:19-cv-00236-BJR |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | 1. Wrongful Discharge in Violation of Public Policy |
| **DOCUSIGN, INC**, a Delaware Corporation, | 2. Breach of Contract |
| Defendant. | 3. Breach of Duty of Good Faith and Fair Dealing |
| | 4. Negligent Misrepresentation |
| | 5. Age Discrimination |
| | 6. Violations of RCW 49.52.050 |

Plaintiff Chris Young ("Plaintiff" or "Young") alleges:

## I. INTRODUCTION

1.1 This is a complaint for damages and other appropriate relief to compensate Plaintiff for losses he suffered as a result of Defendant's unlawful acts, including wrongful termination from employment with Defendant DocuSign, Inc. ("DocuSign"). Plaintiff, a universally respected high-performing employee, was abruptly and unexpectedly terminated on July 27, 2018, shortly after refusing to commit what he reasonably believed to be an illegal act, and reporting employer misconduct.

## II. THE PARTIES

2.1 Plaintiff Chris Young is a former employee of Defendant DocuSign. He is a resident of King County, Washington, where he was employed by DocuSign until he was terminated on July 27, 2018. At all times pertinent to this complaint, Plaintiff was an "employee" within the meaning of the Washington Law Against Discrimination ("WLAD"), RCW 49.60.

2.2 DocuSign, Inc. ("DocuSign") is a Delaware corporation, and touts itself as the world's #1 e-signature solution, with more than 400,000 customers and hundreds of millions of users. Defendant further represents that DocuSign and their employees must demonstrate integrity, reliability, honesty and strength of character at all times, and must always act in the best interest of stockholders and customers. Defendant is an "employer" within the meaning of the WLAD. At all times relevant hereto DocuSign maintained an office in Seattle, Washington where the Defendant conducted business.

## III. JURISDICTION AND VENUE

3.1 Plaintiff filed the Complaint in King County Superior Court, which had original jurisdiction under RCW 2.08.010. Venue was proper in King County, Washington under RCW 4.12.020 and 4.12.025 because Defendant is a resident of King County and King County is the county in which the cause of action or some part thereof arose. Defendant removed this action to the United States District Court for the Western District of Washington at Seattle pursuant to 28 U.S.C §§ 1332, 1441 and 1446.

## IV. FACTS AND BACKGROUND

4.1 Plaintiff was hired by DocuSign in July 2017 for the senior level position of Regional Vice President.

4.2 At the time Defendant sought to retain Plaintiff's valuable services, Young was an experienced sales executive with a reputation for honesty throughout his more than 10-year history of high-level leadership experience, most recently running a 200-employee organization on the West Coast with a Fortune 200 firm.

Mercer Island Law Group PLLC
2448 76th AV SE Suite 100
Mercer Island, WA 98040
206-236-2769,

4.3     Plaintiff's extensive experience and skill sets were highly desired by multiple companies. After just two-weeks on the job market Plaintiff turned down four competing offers to accept the role at DocuSign, in reliance on representations made by Defendant.

4.4     Plaintiff's compensation with DocuSign consisted of approximately: 1) $180,000.00 in annual salary, 2) $120,000.00 in annual performance-based bonus compensation, and very significantly to Young's decision to accept DocuSign's offer, 3) a material and exclusive pre-IPO stock grant reasonably valued at more than $1,000,000.00.

4.5     To induce Plaintiff to join DocuSign, Defendant told Young that: "DocuSign was going public within the year and that the stock options [promised to Young] would be worth a lot of money when that happened."

4.6     It was anticipated that Young would immediately add tremendous value to DocuSign, and in recognition of this fact Plaintiff was granted 14,100 shares of DocuSign stock at hiring. 3,525 shares were scheduled to vest on August 10, 2018. The 3,525 shares had a quantifiable and certain value of $205,155.00 on August 10, 2018, based on the then current closing value of the stock which had a per share price of $58.20.

4.7     Plaintiff excelled as anticipated and delivered tremendous value to DocuSign. Young was the only employee above plan in 2017 and he led the top performing team in the country in 2018. Young was praised for his performance, and he was never advised of any performance issue, nor any other issue with his employment, prior to pretextual issues manufactured at his termination.

4.8     Simultaneous to the revelation of Young's immediate value-ad at DocuSign, it became apparent to Plaintiff that his age and depth of experience were a problem for some at DocuSign, a company with a youth culture which appeared to lack the structure and compliance procedures Plaintiff was used to through his prior employment experience.

Mercer Island Law Group PLLC
2448 76th AV SE Suite 100
Mercer Island, WA 98040
206-236-2769,

4.9 Defendant discriminated against Plaintiff on the basis of age. Plaintiff was subjected to disparate treatment by Defendant when Young was treated less favorably than younger employees under the age of forty.

4.10 Young's direct supervisor Scott Lendzion, Head of Financial Services Vertical Sales, routinely and repeatedly cancelled standing meetings with Young over a period of nearly one-year, depriving Young of mentoring and career advancement opportunities, while favoring younger employees.

4.11 Lendzion also cut Young out of multiple meetings with senior management, thereby denying Plaintiff in-person interaction with DocuSign management, a critical component of success within the DocuSign culture, in an effort to advance his own career through actions adverse to Plaintiff. On one occasion Young was invited to an executive planning meeting. After arriving, Plaintiff was singled out and told he needed to leave the meeting. Plaintiff was the only employee who was subjected to this type of action.

4.12 These adverse actions allowed Plaintiff's younger supervisors to block senior management's exposure to various aspects of Young's work product, including a proposed channel build out conceived of and designed by Young. The proposed channel build out was designed to facilitate and provide a mechanism for external DocuSign partners to bring DocuSign products to market through a formal referral process.

4.13 Plaintiff and his direct supervisors believed the channel build out, proposed by Young, would result in substantial additional revenue for DocuSign. However, just prior to Young's termination Lendzion, and Lendzion's supervisor Matt Willis, Head of All Vertical Sales, blocked work on the channel build out informing Young: "[w]e want to do it, we just don't know when." On information and belief, after Young's termination, younger DocuSign employees proceeded to implement the channel build out designed by Plaintiff, taking credit for Plaintiff's work. Age was a substantial factor in Defendant's adverse employment action against Plaintiff.

Mercer Island Law Group PLLC
2448 76th AV SE Suite 100
Mercer Island, WA 98040
206-236-2769,

4.14  The loose youth culture at DocuSign also fostered other behavior which Plaintiff reasonably believed to be illegal and/or constitute employer misconduct.  It became clear to Plaintiff that DocuSign operated by a mantra that was antithetical to the values they espoused publicly.  The actual DocuSign culture observed by Plaintiff appeared to be get customers and grow revenue at any cost.  DocuSign adopted official policies to this end.  One such policy was called "Writing Ghost E-mails."

4.15  The Ghost E-mail policy is a formal written policy at DocuSign, whereby Defendant requires members of management to send ghost e-mails to DocuSign clients from the DocuSign manager's personal work e-mail address.  In these cases, DocuSign managers did not personally write all, or portions, of the e-mails they sent at DocuSign's direction.  The policy is designed to intentionally misrepresent matters to DocuSign clients, creating misleading representations of DocuSign managers involvement and/or endorsement in matters, in an effort to induce additional business and increase DocuSign revenue.

4.16  DocuSign required Plaintiff to attend company training related to writing ghost e-mails, and DocuSign's official "Ghost E-mail" policy.  The training was led by DocuSign employee Mike Fiascone.  Mr. Fiascone's DocuSign training included direction on how to credibly make misrepresentations to DocuSign customers to facilitate increased business.  On information and belief, Mr. Fiascone's tactics included misrepresentation of his own title.

4.17  Under the Ghost E-mail policy senior level employees, such as Young, received voluminous amounts of e-mails written by subordinate employees.  Defendant required Young and other senior level employees to forward ghost e-mails, written by subordinate employees, from the senior employee's own DocuSign e-mail address to intentionally create the false impression that the senior level employee wrote the content.  Plaintiff believes he forwarded over 200 of these ghost e-mails as a term and condition of his employment with DocuSign.

4.18  Plaintiff became progressively concerned over the Ghost Email policy, and Defendant's requests of him, which he reasonably believed to constitute employer misconduct.

Mercer Island Law Group PLLC
2448 76th AV SE Suite 100
Mercer Island, WA 98040
206-236-2769,

Just prior to Plaintiff's termination he received and forwarded yet another ghost e-mail request from David Bannow, one of his direct reports. Plaintiff received the request to forward the ghost e-mail on a tablet while boarding a plane and traveling for Defendant. The e-mail was one of the 100 plus e-mails Plaintiff routinely assessed on a daily basis.

4.19 The Bannow ghost e-mail request included a representation that Young was the "compliance guy" at DocuSign. Plaintiff reached out to DocuSign employees to report what he reasonably believed to be employer misconduct. Plaintiff indicated that he was not comfortable being called the "compliance guy." In one communication raising the concern to his boss Mr. Lendzion on July 27, 2018 at 9:03 a.m. Plaintiff texted: "[t]his Bannow upside might be the biggest hail Mary – he introduced me as chief Compliance Officer to get an ID Check deal!!! Now that's a stretch."

4.20 Young's concerns about Defendant's Ghost E-mail policy became heightened after DocuSign was listed on the Nasdaq Stock Market. The request that Plaintiff represent himself as the compliance guy, was made simultaneous to another troubling request of Young. Just prior to Plaintiff's termination, Adam Kruse, one of Plaintiff's direct reports, came to him with a request to approve a deal that Plaintiff reasonably believed to constitute illegal conduct. Plaintiff refused to commit what he believed to be an illegal act.

4.21 DocuSign has a process that allows employees to increase billing with a client at end of quarter to inflate revenue and report to shareholders, yet the revenue is not actually billed or brought in for months; if ever. Plaintiff was trained and told to approve under this process.

4.22 Kruse was scheduled to transfer out of Plaintiff's team, and he came to Plaintiff with a request to approve an unsubstantiated sales deal. Plaintiff had observed other instances of what he believed were potentially illegal attempts to inflate DocuSign revenue in advance of quarterly earnings reports. Now he was faced with a direct request to participate in such an act. Plaintiff believed Kruse was seeking to take advantage of this DocuSign policy to improperly

Mercer Island Law Group PLLC
2448 76th AV SE Suite 100
Mercer Island, WA 98040
206-236-2769,

inflate his own commissions without remaining in his position long enough to be accountable if a future audit found the claims to be invalid.

4.23 Kruse pled with Plaintiff: "[h]ey man, let's push this thing through and get a couple grand." Young replied: "I'm not doing anything illegal." Plaintiff informed Kruse: "in good faith, I can't put my signature on this, I know they are not growing and are not going to increase their revenue. We're grasping at straws, this has got to be illegal now that we've gone public. No, I won't approve it."

4.24 Plaintiff reported the incident to his boss Mr. Lendzion, and was surprised to find out that Kruse went around Plaintiff and directly requested that Lendzion approve the deal. Lendzion informed Plaintiff that he had already approved the deal. Lendzion indicated: "[i]f Adam's good with it, I'm good with it."

4.25 Plaintiff was unexpectedly terminated by Defendant, who only provided pretextual reasons for the termination relating to Plaintiff merely following Defendant's official Ghost Email policy. Plaintiff was summoned to Human Resources by Molly Lambright, Senior Director Human Resources. Ms. Lambright questioned the accuracy of a fact in the Ghost Email that Plaintiff sent for Mr. Bannow, an assertion that DocuSign had 400,000 customers. Ms. Lambright informed Plaintiff that she believed this purported fact was inaccurate and that including the statement in an e-mail could be a terminable offense. DocuSign currently touts the fact that they have 400,000 customers on the company's website.

4.26 Plaintiff protested and sought to explain himself. He indicated that he believed that DocuSign did have 400,000 customers. Plaintiff discussed the ghost e-mail and the fact he was following DocuSign policy. To his surprise Ms. Lambright indicated that she was not aware of the Ghost Email policy.

4.27 Plaintiff offered to go get his laptop and walk through the electronic trail on the correspondence with Ms. Lambright to demonstrate what text he had written and what text Bannow had written. Ms. Lambright was unwilling to discuss the matter with Plaintiff and she

Mercer Island Law Group PLLC
2448 76th AV SE Suite 100
Mercer Island, WA 98040
206-236-2769,

excused Young from her office. Ms. Lambright committed to a follow up meeting. Ms. Lambright never met with Plaintiff again.

4.28 Plaintiff's concerns over Defendant's misconduct and illegal activity were confirmed through his meeting with Ms. Lambright. In response to Plaintiff's description of what he had been asked to do under the Ghost E-mail policy, Ms. Lambright indicated that the actions required of Plaintiff under the policy were illegal, not ethical, and inappropriate. Plaintiff informed Ms. Lambright that the whole company does it. Plaintiff advised Ms. Lambright that he was merely following DocuSign policy by forwarding the ghost e-mail, and Plaintiff provided information to Ms. Lambright to corroborate the fact that Plaintiff had reached out internally to express his concerns over being labeled a compliance manager.

4.29 Later that day Plaintiff was called into an office by Lendzion and Willis. Ms. Lambright was not present in this meeting. Lendzion and Willis offered additional and inconsistent statements related to content written by Bannow in the ghost e-mail Plaintiff forwarded in line with DocuSign policy. Lendzion and Willis informed Plaintiff that he was terminated effective immediately. Young was denied any opportunity to defend himself or present facts.

4.30 Defendant's actions in terminating Plaintiff were contrary to company policy and existing business practices at DocuSign.

4.31 Young's employment contract with DocuSign contained the DocuSign, Inc. Code of Ethics, presented as Exhibit B to the employment agreement. The employment agreement creates an atmosphere of job security and fair treatment with promises of specific treatment in specific situations. Young was induced thereby to remain on the job and not actively seek other employment. The promises made to Young in his employment contract with DocuSign are enforceable components of the employment relationship, and DocuSign has an obligation of treatment in accord with those written promises.

Mercer Island Law Group PLLC
2448 76th AV SE Suite 100
Mercer Island, WA 98040
206-236-2769,

4.32 Young understands – but vigorously disputes the claim - DocuSign to allege that his compliance with DocuSign's Ghost Email policy was somehow a violation of the Code. Under the "enforcement" clause at page 13 of Young's employment contract with DocuSign, the agreement provides: "[a]ny violators of this of this Code will be subject to disciplinary action. The disciplinary actions will be determined by the Board." On information and belief, the disciplinary action taken against Young was not determined by the Board.

4.33 In addition, and in part, DocuSign made the following promises to Young. "The Company is committed to maintaining the highest standards of ethical conduct. Our Code of Ethics (this "Code") reflects the business practices and principles of behavior that support this commitment. We expect every employee to read and understand this Code and its application to the performance of his or her business responsibilities. We will hold each of our employees accountable for adherence to this Code. Those who violate this Code will be subject to disciplinary action, up to and including termination. This Code does not describe every practice or principle related to honest and ethical conduct. The contents of the Employment Guidelines section above and the Security Policy that follows this section should be read in conjunction with this Code.

4.34 All employees of the Company must comply with all of the laws, rules and regulations of the United States and other countries, as well as the states, counties, cities and other jurisdictions, applicable to the Company or its business.

4.35 **Fair Dealing**. Each employee should endeavor to deal fairly with the Company's customers, suppliers, competitors, officers and employees. None should take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts or any other unfair dealing practice. Stealing proprietary information, misusing trade secret information that was obtained without the owner's consent, or inducing such disclosures by past or present employees of other companies is prohibited.

Mercer Island Law Group PLLC
2448 76th AV SE Suite 100
Mercer Island, WA 98040
206-236-2769,

4.36 **Reporting Any Illegal or Unethical Behavior**. Employees are encouraged to promptly contact supervisors, managers, the human resources department or the legal department if the Employee believes that the Employee has observed illegal or unethical behavior by any officer, director or employee or by anyone purporting to be acting on the Company's behalf and, the Employee has any doubt, about the best course of action in a particular situation. Such reports may be made anonymously. Confidentiality will be protected, subject to applicable law, regulation or legal proceeding. When a supervisor receives reports of violations or questionable behavior pursuant to this Code of Ethics, that supervisor shall be responsible for bringing such reports to the attention of his or her supervisor or to the Board of Directors, as appropriate, in accordance with the reporting procedures contained in this Code of Ethics. Supervisors must endeavor to honor any confidentiality or anonymity requests made by the reporting person, subject to applicable law, regulation or legal proceedings.

4.37 **No Retaliation.** The Company will not permit retaliation of any kind against anyone who makes a report or complaint in good faith that a violation of this Code or other illegal or unethical conduct has occurred."

4.38 Defendant also promised Young that DocuSign and their officers, directors, and employees would comply with applicable laws, demonstrate integrity, reliability, honesty, strength of character, act in the best interest of DocuSign, their stockholders and their customers, act responsibly in the community, treat each other with respect, conduct all internal discussions, deliberations and activities as if they were completely in the public view, and to **comport themselves in accordance with the highest ethical standards whether or not there is a legal requirement to do so.**

4.39 It would appear that DocuSign expected and demanded that their employees, including Young, abide by the policies articulated in these documents. DocuSign created an atmosphere where Young justifiably relied on these express policies, and thus, justifiably expected Defendant to do the same.

Mercer Island Law Group PLLC
2448 76th AV SE Suite 100
Mercer Island, WA 98040
206-236-2769,

4.40   As a direct result of Defendant's unlawful actions, Plaintiff has been damaged in an amount to be determined at trial.  The total amount of Plaintiff's damages will be determined at trial but is believed to exceed $5,000,000.00.

## COUNT I

### (WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY)

5.1   Plaintiff realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 4.40 above.

5.2   A substantial factor motivating Defendant to terminate Plaintiff, was Plaintiff's refusing to commit an unlawful act, and/or Plaintiff reporting what he reasonably believed to be employer misconduct.

5.3   Policy-protected conduct was a substantial factor in Plaintiff's termination, and DocuSign had no overriding justification for terminating Plaintiff who was universally respected and regarded as a top performer prior his wrongful termination.

5.4   As a result of Defendant's actions, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT II

### (BREACH OF CONTRACT)

6.1   Plaintiff realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 5.4 above.

6.2   Plaintiff entered into valid and binding employment contracts with DocuSign, including Plaintiff's DocuSign, Inc. Restricted Stock Unit Grant Notice and each party's agreement to abide by the DocuSign Code of Conduct.  The DocuSign Code of Conduct governed conduct required in the relationship and gave Plaintiff specific assurances upon which he relied in making his decision to accept employment with DocuSign and perform by rendering nearly one year's labor under the Restricted Stock Unit Grant Notice; which Plaintiff accepted as read with the DocuSign Code of Conduct agreement.  The DocuSign Code specifically called out

Mercer Island Law Group PLLC
2448 76th AV SE Suite 100
Mercer Island, WA 98040
206-236-2769,

certain employment agreements outside of the Code, noting that they should be "read in conjunction with this Code." Plaintiff reasonably read his Restricted Stock Unit Grant Notice and all of his Employment Agreements in conjunction with the Code.

    6.3    DocuSign breached their agreement with Young, when they failed to perform specific duties in specific situations when the contractual duty was due. DocuSign's breaches include, but are not limited to: 1) failing to maintaining the highest standards of ethical conduct, 2) failing to ensure DocuSign employees must comply with all of the laws, rules and regulations of the United States, and allowing DocuSign employees to attempt to induce Plaintiff to engage in illegal activity, 3) not dealing fairly with DocuSign customers, 4) inducing Plaintiff to report what he reasonably believed to be illegal and/or unethical behavior and then violating the DocuSign anti-retaliation policy by terminating Plaintiff in substantial part for reporting such misconduct, 5) failing to hold employees other than Plaintiff accountable for adherence to this Code, 6) requiring Plaintiff to comply with the Ghost Email policy and then allegedly and pre-textually terminating Plaintiff for following DocuSign policy, and 7) failing to have the Board determine disciplinary action. Defendant's breach substantially defeated the purpose of the contract, and deprived Plaintiff of a benefit he reasonably expected.

    6.4    Plaintiff is entitled to the sum of money that will place him in as good a position as he would have been in if both Plaintiff and Defendant had performed all of their promises under the contract. Defendant's breach caused Plaintiff damages in an amount to be proven at trial.

**COUNT III**

(BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING)

    7.1    Plaintiff realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 6.4 above.

    7.2    As in all contractual agreements, DocuSign was required to perform the obligations contained in its contracts with Plaintiff in good faith. This duty requires the parties to cooperate with each other so that each may obtain the full benefit of performance.

Mercer Island Law Group PLLC
2448 76th AV SE Suite 100
Mercer Island, WA 98040
206-236-2769,

7.3 DocuSign breached its duty of good faith through actions discussed above, including acts of wrongful termination, which deprived him of stock options set to vest in a matter of days, after Plaintiff labored for nearly one-full-year in expectation of these wages set to be paid August 10, 2018.

7.4 Defendant's breach of the duty of good faith and fair dealing caused Plaintiff damages in an amount to be proven at trial.

## COUNT IV

### (NEGLIGENT MISREPRESENTATION)

8.1 Plaintiff realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 7.4 above.

8.2 Defendant knew or should have known that the promises made to Young about the DocuSign Code of Conduct, and the intention of Defendant and Defendant's agents to abide by such promises, were either affirmatively false or materially misleading due to Defendant's omissions. Defendant negligently supplied this information to Young to induce him to act and continue to act as an Regional Vice President, so that Defendant could utilize Young's representation on the Executive Team to support a high IPO offer price and continue to increase share price and reap profits from their improper and unlawful actions, and extract value from Young's services for less money than parties had bargained.

8.3 Plaintiff reasonably relied on the information provided by Defendant and suffered significant damages in an amount to be proven at trial as a direct and proximate cause of Defendant's misrepresentations.

## COUNT V

### (AGE DISCRIMINATION)

9.1 Plaintiff realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 8.3 above.

Mercer Island Law Group PLLC
2448 76th AV SE Suite 100
Mercer Island, WA 98040
206-236-2769,

9.2     Defendant's illegal acts discussed above violated RCW 49.60.180. Plaintiff alleges disparate treatment. Plaintiff's age was a substantial factor motivating Defendant's decision to terminate Plaintiff. Plaintiff is forty years of age or older, satisfying the limitation imposed by RCW 49.60.205.

9.3     As a result of Defendant's actions, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT VI
### (VIOLATIONS OF RCW 49.52.050)

10.1    Plaintiff realleges and incorporates by this reference each and every allegation set forth in paragraphs 1 through 9.3 above.

10.2    On information and belief, Defendant willfully and with intent to deprive Young of part of his wages, paid Young a lower wage than the wage Defendant was obligated to pay by statute, ordinance and/or contract.

10.3    Plaintiff does not seek double damages on the basis of Defendant's violation of anti-discrimination statues, rather, consistent with the Court's guidance in *Hemmings v. Tidyman's Inc.,* citing the Washington State Supreme Court in *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 961 P.2d 371, 377 (Wash. 1998), Plaintiff seeks double damages where Defendant withheld quantifiable and undisputed amounts of accrued pay.

10.4    DocuSign, Inc. Restricted Stock Unit Grant Notice and each party's agreement to abide by the DocuSign Code of Conduct, created a unique employment agreement between DocuSign and Plaintiff. The totality of Plaintiff's new hire Employment Agreements created an atmosphere of job security and fair treatment with promises of specific treatment in specific situations, inducing Plaintiff to refrain from seeking alternative employment and continue working for Defendant, which altered any claim of a purely at-will employment relationship.

10.5    These facts, combined with DocuSign's instruction to Plaintiff that employment agreements outside of the Code, should be "read in conjunction with this Code", create a situation

Mercer Island Law Group PLLC
2448 76th AV SE Suite 100
Mercer Island, WA 98040
206-236-2769,

analogous in some ways to Mr. Coulombe's claim in *Coulombe v. Total Renal Care Holdings, Inc.* Mr. Coulombe asserted that DaVita's collection or receipt of his stock options violated Washington's rebate of wages or so-called anti-kickback statute, RCW 49.52.050. Accepting that stock options, as wages, may fall under RCW 49.52.050, the Court nonetheless rejected Mr. Coulombe's claim for double damages under RCW 49.52.070, because, under his specific facts, Mr. Coulombe had knowingly relinquished his options, and thus fell under the "knowingly submitted" proviso of Section 070. *Coulombe v. Total Renal Care Holdings, Inc*., 2007 U.S. Dist. LEXIS 7766, 2007 WL 419347. Young's facts are clearly distinguishable, in that he did not knowingly submit to DocuSign's violation of RCW 49.52.050. Facts indicate that Young did not knowingly relinquish his stock options; Young never agreed to forego compensation.

10.6 "The Legislature has evidenced a strong policy in favor of payment of wages due employees by enacting a comprehensive scheme to ensure payment of wages, including the statutes at issue here which provide both criminal and civil penalties for the willful failure of an employer to pay wages . . . By providing for costs and attorney fees, the Legislature has provided an effective mechanism for recovery even where wage amounts wrongfully withheld may be small . . . This comprehensive legislative system with respect to wages indicates a strong legislative intent to assure payment to employees of wages they have earned . . .

10.7 The act is thus primarily a protective measure, rather than a strictly corrupt practices statute. In other words, the aim or purpose of the act is to see that the employee shall realize the full amount of the wages which by statute, ordinance, or contract he is entitled to receive from his employer, and which the employer is obligated to pay, and, further, to see that the employee is not deprived of such right, nor the employer permitted to evade his obligation, by a withholding of a part of the wages . . . The statute must be liberally construed to advance the Legislature's intent to protect employee wages and assure payment . . .

10.8 The critical determination in a case under RCW 49.52.070 for double damages is whether the employer's failure to pay wages was "willful." In the past, our test for "willful"

FIRST AMENDED COMPLAINT - 15

failure to pay has not been stringent: the employer's refusal to pay must be volitional. Willful means 'merely that the 'person knows what he is doing, intends to do what he is doing, and is a free agent' . . . ('Under RCW 49.52.050(2), a non-payment of wages is willful when it is not a matter of mere carelessness, but the result of knowing and intentional action.'). The nonpayment of wages is willful "when it is the result of a knowing and intentional action . . . Ordinarily, the issue of whether an employer acts "willfully" for purposes of RCW 49.52.070 is a question of fact." *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 157 961 P.2d 371 (1998 Wash).

    10.9 Pursuant to RCW 49.52.070, Plaintiff seeks double damages, together with costs of his suit and a reasonable sum for attorney's fees. Plaintiff asserts that, minimally, the 3,525 shares scheduled to vest on August 10, 2018, with a known and certain value of $205,155.00, constitute wages earned - quantifiable and undisputed amounts of accrued pay – that are subject to the remedy articulated by the Legislature under RCW 49.52.070 for Defendant's violation of any provision of RCW 49.52.050 (1) and (2).

## PRAYER FOR RELIEF

**WHEREFORE, Young prays for relief as follows:**

1. Judgment against Defendant on each of his claims;
2. an award of damages, including but not limited to lost wages and benefits, lost stock options, lost future earnings, and non-economic damages for mental and emotional distress, embarrassment, humiliation and loss of enjoyment of life;
3. an award of pre-judgment interest on all liquidated amounts and an award of post-judgment interest at the highest legal rate then applicable;
4. an award of double damages as appropriate under RCW 49.52.070;
5. an award of Plaintiffs' reasonable attorney's fees, costs, other expenses pursuant to RCW 49.52.070, RCW 49.60.030(2), RCW 49.48.030 if ultimately applicable to this action, and/or as otherwise allowed by law; and
6. for such other and additional relief as the Court deems just and proper.

FIRST AMENDED COMPLAINT - 16

DATED this 27th day of March, 2019

                                      Mercer Island Law Group, PLLC

                                        By: _____

                                        George O. Tamblyn #15429

                                        Jason J. Gillis #52762

# CERTIFICATE OF SERVICE

I, Heather Maloney, certify under penalty of perjury under the laws of the State of Washington, that the following is true and correct:

At all times hereinafter mentioned, I was and am a citizen of the United States of America, a resident of the State of Washington, over the age of eighteen (18) years, not a party to the above-entitled action, and competent to be a witness herein.

On the date set forth below I served the document listed below, in the manner noted on the following entity: FIRST AMENDED COMPLAINT

| PARTY/COUNSEL | DELIVERY INSTRUCTIONS |
|---|---|
| Matthew Jedreski  WSBA#50542<br>Ryan Hess            WSBA#50738<br>David Wright Tremaine LLP<br>920 Fifth Avenue, Ste 3300<br>Seattle, Washington 98104-1610<br>Phone (206) 622-3150<br>Fax (206) 757-7700<br>mjedreski@dwt.com<br>ryanhess@dwt.com | ☐ Hand Delivery<br>☐ Certified Mail<br>☐ Facsimile<br>☒ E-mail<br>☒ U.S. Mail |

DATED this 27th day of March, 2019.

MERCER ISLAND LAW GROUP, PLLC

/s/ Heather Maloney
  Heather Maloney
  Paralegal